## Application of ALL-STATES MOVING & STORAGE CO., Inc.
### No. 7268-CCT.

Florida Public Utilities Commission.
May 12, 1965.

Philip D. Beall, Pensacola, for applicant.

Leo Foster, Tallahassee, for Harrell Moving & Storage Co., protestant (withdrawn).

J. Kenneth Ballinger, Tallahassee, for Simmons Moving & Storage Co., protestant.

Richard J. Brooks, Tallahassee, for Simmons Moving & Storage, Inc. (withdrawn) and Van Horne Transfer & Storage Co., protestants.

Louis Ossinsky, Sr. of Ossinsky & Kroll, Daytona Beach, for Ridgeway Transfer Co., Daytona Moving & Storage Co. and Titusville Transfer & Storage Co. d/b/a Brevard-Ridgeway Moving & Storage, protestants.

John T. Bond, Miami, for May's Transfer, Inc., Seven Santini Brothers, Inc., Brandon Transfer & Storage, Inc., Lee County Terminal Corporation and Joe Welsh Transfer, protestants.

Sol H. Proctor, Jacksonville, for Blocker Transfer & Storage Co. (withdrawn), Goodall Brothers Transfer Warehouse Co. (withdrawn), Plunkett Brothers, Inc. (withdrawn), Plunkett Bonded Warehouse, Inc. (withdrawn), Southern Transfer & Storage Co. (withdrawn), Withers Van Lines, Inc., Withers Van Lines of West Palm Beach, Weathers Bros. Transfer Co., Sarasota Transfer and Storage Co., Caldwell Bonded Warehouse, Inc., and Yarnell Warehouse & Transfer, Inc., protestants.

Richard B. Austin, Jacksonville, for Acme Moving & Storage Company of Jacksonville, Fulford Van & Storage Co., Inc., Suddath Moving & Storage, Inc., Fidelity Storage & Transfer Co., Joiner Van & Storage Service, Inc., Bloodworth Transfer & Storage Co., Howard Van & Storage Co., Blackburn's Transfer & Storage, Inc., Melbourne-Eau Gallie Moving & Storage Co., Rapid Moving & Storage Co., Inc., Allison Transfer Co., Delcher Brothers Storage Co., Elder Moving & Storage Co. and Kennelly Moving & Storage Co., protestants.

Chairman EDWIN L. MASON, Commissioners JERRY W. CARTER and WILLIAM T. MAYO each participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to statutory notice the commission by its duly designated examiner, Harold E. Smithers, held public hearings on this application on April 21-24, 1964, and May 18 and 19, 1964, in the commission's hearing room, Whitfield Bldg., Tallahassee.

The examiner's report and recommended order were duly served on all of the parties. Exceptions to the recommended order and replies thereto were filed with the commission. Oral argument was heard on March 25, 1965. The entire record herein, including the application, the testimony adduced at the public hearing, the exceptions to the recommended order and

replies thereto, and oral argument heard thereon, has been examined by the full commission. After due consideration, the commission now enters its own order in this cause.

Under certificate no. 719 issued July 6, 1962, the applicant may transport household goods throughout the state with motor vehicles domiciled at Pensacola and Ft. Walton Beach. By this application, the applicant originally sought to extend the certificate to include 23 additional domicile points. At the outset of the hearing, the application was restrictively amended by deleting certain requested domicile points so that the twelve remaining were — Panama City, Tallahassee, Jacksonville, Daytona Beach, Orlando, Cocoa, Pompano Beach, Ft. Myers, Sarasota, Tampa, Miami and West Palm Beach. Prior to reconvening the hearing on May 18, 1964, the commission granted the protestants' motion to dismiss as to Tallahassee in order no. 6274. As a result of the foregoing actions, certain protestants withdrew and the hearing proceeded on the application as amended.

At the outset of the hearing, general agreement was obtained to limiting testimony regarding each requested domicile point to the named municipality and the statutory municipal exempt area.

From the evidence presented by the applicant's president, the applicant appears to be qualified to domicile motor vehicle equipment at the requested domicile points if the applicant would lease motor vehicle equipment from their booking agents at each particular domicile point, rather than purchase vehicle equipment which it does not appear financially able to do. Whether or not leasing would be done had not been determined. Presently, the applicant has two tractor-trailers and seven straight trucks for line haul movements of household goods. The applicant is interstate agent for North American Van Lines at Pensacola and Ft. Walton Beach, and some of his agents are interstate agents for North American also.

The applicant's banker testified to the satisfactory credit rating of the applicant although he could not remember a specific instance when money had been loaned by the bank to the applicant. A Pensacola International Harvester truck dealer testified that he would be willing to sell the applicant motor vehicle equipment on credit, although he had never sold the applicant any equipment on credit.

Three witnesses, Mr. Fogarty of Fogarty Bros. Transfer, Inc. (an intra and interstate carrier of household goods), Mr. Lambert, d/b/a Paul Arpin Van Lines (the Jacksonville agent for another intrastate carrier) and Professor Kafoglis of the Uni-

versity of Florida, testified to the effect that domiciling motor vehicle equipment at each of the requested domicile points would provide the applicant with a more efficient and economical operation. Another public witness representing Boeing Aircraft at Cape Kennedy, testified that granting the applicant domicile rights at Cocoa would be beneficial to his company.

The balance of the evidence presented by the applicant as to each of the requested domicile points can be divided into three categories as follows — growth of each municipality involved, shipments made by the applicant, and his booking agents.

To show the growth of each municipality involved, the applicant presented U. S. Census information showing the population for 1950 and 1960. These figures will not be repeated since their recital would merely substantiate a well-known fact — that these municipalities have experienced a substantial growth and increased population over the years, as have other municipalities in the state for which domicile rights were not requested by the amended application. Other statistical information from the U. S. Census indicating the general mobility of population will not be repeated as that also substantiates a foregone conclusion.

The applicant handled a total of 38 shipments from the various requested domicile points over various periods of time, with 12 of the 38 shipments terminating at one of the other requested domicile points as follows —

| Requested domicile point | Period of time | No. of Shipments from indicated point | No. of shipments from Indicated Point terminating at another requested domicile point |
|---|---|---|---|
| Panama City | 2/63—3/64 | 8 | 3 |
| Jacksonville | 9/62—3/64 | 15 | 2 |
| Daytona Beach | 2/64—3/64 | 2 | 1 |
| Orlando | 10/62—1/64 | 3 | 2 |
| Cocoa | 8/62—3/64 | 1 | 0 |
| Pompano Beach | 10/63—3/64 | 3 | 1 |
| Fort Myers | 12/63 | 1 | 0 |
| Sarasota | 7/63—3/64 | 3 | 2 |
| Tampa | | 0 | 0 |
| Miami | 5/63—3/64 | 2 | 1 |
| West Palm Beach | | 0 | 0 |

The applicant has registered booking agents at ten of the eleven domicile points requested in the amended application and has an interline agreement with a carrier certificate for Palm Beach County only. With the exception of Panama City, a representative of each of the above testified that the applicant is unable to provide requested service, particularly on smaller weight shipments moving a short distance because the applicant cannot domicile motor vehicle equipment at their particular location; that they have the necessary facilities (office, warehouse and

vehicular) to perform their function, with the exception of Tampa where there is no warehouse; that it would be more efficient and economical for the applicant to domicile motor vehicle equipment at their particular location; and, that they could not specifically state when a shipper that had requested service from them and which they were unable to handle did not receive reasonable service from the existing carriers. Of the eleven agreements involved above, six were made after the filing of this application (Jacksonville, Daytona Beach, Orlando, Tampa, Miami and West Palm Beach), four were made within 2½ months prior to the filing of this application (Ft. Myers, Pompano Beach, Sarasota and Cocoa) and one (Panama City) was slightly more than one year old.

At the conclusion of the applicant's case the protestants made motions to dismiss (Tr. 779-785) which were referred to the commission pursuant to Rule 310-2.82.

Of the large number of protestants in this hearing, sixteen appeared and testified, and stipulations were made to the admission of certain exhibits by two other protestants. Each requested domicile point was specifically protested by one or more of the foregoing eighteen protestants based on their domicile authority, and each protested all points based on their authority to serve all points in Florida. Protestants' evidence generally pertained to their authority, facilities and vehicle equipment, and nine introduced exhibits of specific shipments handled. Each generally testified that granting the application would adversely affect them as it would further dilute the available business, particularly the smaller weight shipments moving a short distance and those shipments requiring immediate service; that their vehicle equipment is not being used to its fullest extent and equipment was available to make any of the moves that the applicant made had they been called; and, that they have been and are ready, willing and able to handle any and all requests for service. Testimony was also given relative to the number of household carriers domiciled at each point. The principal objection by the protestants is that the grant of the application would, in effect, be the same as granting a certificate to each of the applicant's booking agents in that the agents would become carrier booking agents (through vehicle lease agreements) so that the booking agent then could transport household goods throughout the state, although in the applicant's name; and, that this would be contrary to the purpose of the domicile rule.

Of the 18 protestants, 11 have only one domicile point and appear to be able to provide service to the public without considerable financial detriment to themselves. For example, one

of the protestants, Melbourne-Eau Gallie Moving and Storage Co., Inc., with state-wide authority domiciling at Melbourne only, handled 227 shipments from May, 1963 through April, 1964, of which three originated at Cocoa (closest requested domicile point), 79 originated at one of the other ten requested domicile points, and 22 of the 82 shipments just mentioned terminated at another of the requested domicile points. Of the requested domicile points, this protestant has booking agents at Jacksonville, Tampa, Miami and Orlando. Under new management this carrier started with one straight van truck in 1959 and is now operating three tractor-trailer units and two straight vans.

The applicant takes the position that the showing of growth and increased population, together with carrier convenience, would prove public convenience and necessity. In support of this position, the applicant relies on this commission's order no. 5638 granting Kennelly Moving and Storage Company domicile authority at Tampa, which was taken to the Supreme Court for review (Fogarty Bros. Transfer, Inc., et al, v. Mason, et al, 162 So. 2d 666, certiorari denied without opinion). However, the commission deems the last cited case to hold that this commission has a wide latitude in exercising its expertise in matters of this nature.

In summary, this applicant obtained state-wide authority about two years ago, has recently obtained many booking agents through-out the state, and has made a limited number of shipments from the requested domicile points. The protestants have generally been in business a considerable period of time with large investments in equipment and facilities and have handled shipments throughout Florida without the benefit, in most instances, of an extensive number of domicile points.

From the entire record in this docket, the commission concludes the applicant has not shown that public convenience and necessity require the granting of the amended application except as to the requested domicile point of Panama City.

It is, therefore, ordered that the amended application of All-States Moving and Storage Company, 820 Navy Boulevard, Pensacola, Florida, for extension of its certificate of public convenience and necessity no. 719 be and the same is hereby granted in part, and said certificate no. 719 is hereby extended so as to authorize the domiciling of motor vehicle equipment at Panama City, Florida. It is further ordered that said application be and the same is hereby denied in all other respects. It is further ordered that protestants' motions to dismiss be and the same are hereby denied.